**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**GANNON BERTRAND**                          **CASE NO.  6:21-CV-00705**

**VERSUS**                                   **JUDGE ROBERT R. SUMMERHAYS**

**U S COMMISSIONER OF SOCIAL**               **MAGISTRATE JUDGE CAROL B.**
**SECURITY**                                 **WHITEHURST**

# REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

## ADMINISTRATIVE PROCEEDINGS

The *pro se* claimant, Gannon Bertrand, fully exhausted his administrative remedies prior to filing this action in federal court.  The claimant filed an application for a period of disability and disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on

March 23, 2013.[1]  His applications were denied.[2]  The claimant requested a hearing,[3] which was held on March 23, 2020 before Administrative Law Judge Lawrence T. Ragona.[4]  The ALJ issued a decision on April 9, 2020,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from March 23, 2013 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on January 20, 2021 that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on December 22, 1978.[7]  At the time of the ALJ's decision, he was 42 years old.  He completed 11th grade and obtained a GED

---

[1]    Rec. Doc. 9 at p. 291.

[2]    *Id.* at pp. 190-93.

[3]    *Id.* at pp. 199-201.

[4]    The hearing transcript is found at Rec. Doc. 9 at 118-45.

[5]    *Id.* at pp. 168-85.

[6]    *Id.* at pp. 1-4.

[7]    *Id.* at p. 291.

certificate.[8]  He has past relevant work experience as an electrician helper, a spray painter, a shop hand/material handler, and a tank truck driver.[9]  He alleges that he has been disabled since March 23, 2013[10] due to neck fusion surgery; degenerative disc disease; generalized anxiety disorder; arthritis; and panic attacks.[11]

## ANALYSIS

### A.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be

---

[8]      *Id.* at p. 122.

[9]      *Id.* at p. 183.

[10]     *Id.* at p. 291.

[11]     *Id.* at p. 303.

[12]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15]   In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[17]   Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

---

[14]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[15]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[16]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[17]     *Martinez v. Chater*, 64 F.3d at 174.

[18]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

**B.**    **Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[19]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[20]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant

---

[19]      *See* 42 U.S.C. § 423(a).

[20]      42 U.S.C. § 1382(a)(1) & (2).

[21]      42 U.S.C. § 1382c(a)(3)(A).

lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

## C.    <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[23]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[24]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can

---

[22]    42 U.S.C. § 1382c(a)(3)(B).

[23]    20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[25]    20 C.F.R. § 404.1520(a)(4).

still do despite his physical and mental limitations based on all relevant evidence in the record.[26]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[27]

The claimant bears the burden of proof on the first four steps.[28]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[31]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

---

[26]    20 C.F.R. § 404.1545(a)(1).

[27]    20 C.F.R. § 404.1520(e).

[28]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[31]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

## D.    THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined that the claimant meets the insured status requirements of the Social Security Act through December 31, 2017.[33]  He further determined, at step one, that the claimant has not engaged in substantial gainful activity since March 23, 2013.[34]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: cervical degenerative disc disease with radiculopathy stats-post fusion; lumbar degenerative disc disease; diabetes with neuropathy in the upper extremities; obesity; anxiety/panic disorder; and depressive disorder.[35]  This finding is supported by the evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[36]  The claimant does not challenge this finding specifically but argues

---

[33]    Rec. Doc. 9 at p. 170.

[34]    *Id.*

[35]    *Id.*

[36]    *Id.* at p. 171.

that his mental impairments, including unpredictable panic attacks, preclude him from working.

The ALJ found that the claimant has the residual functional capacity to perform light work with the following limitations: limited to jobs with 1-2-3 step instructions; and limited to occasional interaction with the general public, where he would be more comfortable working with things rather than people.[37]  The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[38]

At step five, the ALJ found that the claimant was not disabled from March 23, 2013 through April 9, 2020 (the date of the decision) because there are jobs in the national economy that he can perform.[39]  The claimant challenges this finding.

## E.    THE ALLEGATIONS OF ERROR

The claimant argues that the ALJ committed the following errors:

1.    The ALJ erred in concluding that the claimant had no evidence to prove his anxiety disorder; and

2.    The ALJ should not have considered the prior administrative medical opinions of Drs. Craig and Hauck, nor should he have considered the medical opinion of Dr. Boudreaux;

---

[37]    *Id.* at p. 172.

[38]    *Id.* at p. 183.

[39]    *Id.* at pp. 184-85.

3.    The ALJ improperly relied on the VE testimony that the claimant can perform other work that exists in significant numbers in the national economy.

The undersigned will consider each alleged error in turn.

### 1. The opinions of Ms. Hebert and Ms. Melton and the Appeals Council's Denial of Review

The claimant argues that the Appeals Council denied review without properly considering all of the additional evidence he submitted after the ALJ issued his decision. He specifically argues that the Mental Residual Functional Capacity Assessments (RFCs) from Kathryn Hebert and Mandi Melton, two mental health treatment providers with whom he has treated since 2015 and 2017, respectively, do not support the ALJ's conclusion. The claimant argues that both of these providers indicated he has marked and/or extreme limitations in several areas of mental functioning and essentially contends that he satisfies the requirements of Listing 12.04 and Listing 12.06.[40]

With respect to the claimant's mental health functioning, the ALJ determined that the claimant's mental impairments do not meet or medically equal the criteria of Listings 12.04 and 12.06, because the claimant has only moderate or mild

---

[40]    Although the claimant does not specifically argue the application of Listings 12.04 and 12.06, he argues that he has disabling anxiety. "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276 (11th Cir. 2021), *citing Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (quotation omitted).

limitations in the areas of understanding, remembering, or applying information (moderate); interaction with others (moderate); concentration, persistence, and pace (moderate); and adapting or managing oneself (mild).[41]  In so concluding, the ALJ referenced the treatment records of Ms. Hebert and Ms. Melton that had been provided prior to the date of the decision.  While the ALJ noted that both Ms. Hebert and Ms. Melton have treated the claimant for a number of years and both have reported that he suffers from generalized anxiety disorder, panic disorder, and major depressive disorder – and that the claimant's impairments would prevent him from working in an environment that requires social interaction and efficient, effective problem-solving skills – the ALJ nevertheless discounted the opinions of these treatment providers on grounds they did not provide functional assessments in their reporting.  The ALJ also concluded that the overall record supports only moderate limitations related to mental impairment symptoms.

The ALJ's decision was issued on April 9, 2020.  On October 19, 2020, with the permission of the Appeals Council, the claimant sent additional medical evidence to the Appeals Council, including Mental Residual Functional Capacity Assessments from Ms. Hebert (completed July 9, 2020) and Ms. Melton (completed July 11, 2020).  Ms. Hebert's Mental RFC can be summarized as follows:

---

[41]     Rec. Doc. 9 at pp. 171-72.

<u>Moderate Limitations</u>:

- ability to understand and remember detailed instructions;
- ability to carry out detailed instructions;
- ability to make simple work-related decisions;
- ability to interact appropriately with the general public;
- ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- ability to respond to changes in the work setting; and
- ability to set realistic goals or make plans independently of others.[42]

<u>Marked Limitations</u>:

- ability to maintain attention and concentration for extended periods;
- ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- ability to work in coordination with or proximity to others without being distracted by them;
- ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods; and
- ability to tolerate normal levels of stress.[43]

Ms. Melton's Mental RFC can be summarized as follows:

Moderate Limitations

- ability to remember locations and work-like procedures;
- ability to carry out detailed instructions;

---

[42]    *Id.*

[43]    *Id.*

- ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and
- ability to sustain an ordinary routine without special supervision.[44]

Marked Limitations:

- ability to understand and remember detailed instructions;
- ability to maintain attention and concentration for extended periods;
- ability to work in coordination with or proximity to others without being distracted by them;
- ability to make simple work-related decisions;
- ability to interact appropriately with the general public;
- ability to ask simple questions or request assistance;
- ability to accept instructions and respond appropriately to criticism from supervisors; and
- ability to be aware of normal hazards and take appropriate precautions.[45]

Extreme Limitations:

- ability to respond appropriately to changes in the work setting; ability to travel to unfamiliar places or use public transportation;
- ability to set realistic goals or make plans independently of other; and
- ability to tolerate normal levels of stress.[46]

Finally, with respect to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to

---

[44]    *Id.* at pp. 64-66.

[45]    *Id.*

[46]    *Id.*

perform at a consistent pace without an unreasonable number of and length of rest periods, Ms. Melton reported that the claimant vacillates between "marked" and "extreme" limitations.[47]

Both Ms. Hebert and Ms. Melton reported that the claimant's mental impairments preclude him from working on a sustained basis.[48]  Additionally, each assessment includes a page with the following questions:

> Does the Mental Residual Functional Capacity Assessment signed and fill[ed] out by you . . . reflect your opinion of Gannon Bertrand's psychological condition on or before March 23, 2020?

> Do you believe Gannon Bertrand's psychological/mental health condition was in a similar state on or before December 31, 2017 such that he was unable to work on a consistent and sustained basis due to extreme anxiety, frequent panic attacks, depression and poor concentration and focus?

> For both questions, Ms. Hebert and Ms. Melton responded "yes."[49]

The additional medical information submitted by the claimant was received and reviewed by the Appeals Council, which found that "this evidence does not show a reasonable probability that it would change the outcome of the decision."[50]  The claimant argues that this is error.

---

[47]    *Id.* at p. 65.

[48]    *Id.* at pp. 21, 67.

[49]    *Id.*

[50]    *Id.* at p. 2.

Reviewing the materiality of new evidence requires the Appeals Council to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995), *citing Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994); *Haywood v. Sullivan,* 888 F.2d 1463, 1471 (5th Cir. 1089); *Bradley v. Bowen,* 809 F.2d 1054, 1057–8 (5th Cir.1987). When new evidence becomes available after the ALJ's decision, and there is a reasonable likelihood that the new evidence could change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Crisman v. Astrue*, 2010 WL 2540602, at \*6 (N.D. Miss. June 17, 2010), *citing Govea v. Astrue,* 2008 WL 2952343, \*4 (W.D.Tex.,2008), *citing Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995). However, evidence is not considered "material" if it relates to a disability or to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought. *Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir. 1994). Where new and material evidence was properly presented to and considered by the Appeals Council, this court must consider that evidence as part of the entire record, even if the Appeals Council denied review. *Rodriguez v. Barnhart,* 252 F.Supp.2d 329, 335 (S.D.Tex. 2003).

In this case, the new evidence submitted by the claimant bears directly on the question of the limitations imposed by the claimant's mental impairments. Furthermore, the ALJ's determination of non-disability is inconsistent with the mental RFCs provided by Ms. Hebert and Ms. Melton, who have treated the claimant since 2015 and 2017, respectively.[51]  Both mental RFCs indicate that the mental impairments existed prior to 2017, therefore, these RFCs relate to the time period for which the disability benefits were denied.  Review of the administrative record also shows that the opinions of Ms. Hebert and Ms. Melton are largely consistent with the opinions of other examining physicians, including Dr. James Blackburn and Dr. Jean Boudreaux.

For instance, psychiatrist Dr. James Blackburn examined the claimant on May 11, 2015, after the claimant was referred by his primary care physician, Dr. Joe Sledge, who was treating the claimant's workplace injury.  Dr. Sledge had reported

---

[51]    In 2017, the social security regulations were amended to change the weight given to the opinions of medical professionals, including therapists.   Prior to 2017, therapists were not considered "acceptable medical sources" and their opinions were not entitled to any weight. Nevertheless, under the prior regulations, even the opinions of "other sources" such as psychotherapists were required to be considered by an ALJ.  *See, e.g., Willoughby v. Comm'r of SSA*, 2019 WL 1429663 (E.D. Tex. Mar. 29, 2019).  Under the new regulations, which are applied after 2017, the hierarchy of opinions among treating, examining, or non-examining medical experts is no more and ALJs are directed to determine whether the opinions of any medical expert – treating, examining, or non-examining – taken as a whole, are persuasive.  ALJs are required to address two factors in their decisions -- the supportability of the opinions and the consistency of the opinions with other evidence in the record.  *See generally Dotson v. Kijakazi*, 2022 WL 180654 (N.D. Mississippi Jan. 19, 2022).

that the claimant's anxiety was "intolerable."[52]  After examining the claimant, Dr. Blackburn reported the following:

> MENTAL STATUS
>
> The combination of his physical discomfort and his anxiety and emotional turmoil are creating significant discomfort and misery for him.  His reports of the intensity of his anxiety that he experienced prior to his injury and since his injury are also compatible with information he has provided to other physicians.  His complaints of residual pain affecting primarily his neck is consistent with the pathology detected objectively prior to his surgery and the surgical procedure he has had.[53]

Dr. Blackburn diagnosed the claimant with severe generalized anxiety disorder and a pain disorder secondary to a physical condition (cervical disc disease) and further noted:

> In addition to reviewing his medical records and providing a clinical evaluation of Mr. Bertrand, he was also given four psychological tests including the Beck Depression Inventory, the Beck Anxiety Inventory, the BBHI-II, and the PAI personality assessment.  His scores on those tests indicate severe anxiety and severe depression and by the history he related are more severe since his injury.
>
> Mr. Bertrand has a longstanding history of an anxiety disorder.  That disorder was treated for years by his primary care physician successfully enough that Mr. Bertrand was able to maintain regular employment and have a reasonable quality of life.  Since his injury, he is no longer able to work, no longer able to be active physically, is experiencing ongoing pain and physical limitations.

---

[52]    Rec. Doc. 9 at p. 889.

[53]    *Id.* at p. 895.

**Mr. Bertrand's current anxiety disorder is not being adequately treated.** It is critical that he be provided adequate appropriate treatment as soon as possible. Without appropriate treatment, his condition is going to continue to deteriorate psychologically and he will be less likely to recover physically.

Mr. Bertrand is at high risk for psychiatric condition worsening. Appropriate treatment has the reasonable potential to alleviate his symptoms.

[ . . . ]

The discontinuation of his Ativan, his Effexor, his Norco, and other medications that have provided him at least partial relief is not considered appropriate and is in fact worsening his condition.

Although Mr. Bertrand was approved for an evaluation only, his anxiety was so severe that I prescribed Valium for him in a dosage of 10 mgs. twice daily. This at least has the potential to decrease some of his intense anxiety and alleviate some of his panic attacks. It is strongly recommended that he have return appointments approved as soon as possible so that more adequate medication options ca ben instituted.

[ . . . ]

There is the reasonable possibility if not probability that Mr. Bertrand's symptoms, at least of anxiety and depression, can be alleviated adequately enough for him to be able to return to the workforce. It can be stated with a reasonable degree of **medical certainty that without treatment, his condition will continue to deteriorate and he will be at much greater risk for becoming permanently disabled.**[54]

The claimant went on to treat with Ms. Hebert from March 2015 through

November 2017. The ALJ noted that "mental status exams throughout these records

---

[54]    *Id.* at pp. 884-97 (emphasis in original).

showed anxiety, but they were otherwise normal and unchanged from the initial evaluation."[55]

On August 18, 2016, at the request of the worker's compensation carrier, the claimant was evaluated by Dr. Jean Boudreaux for a psychological/pain evaluation. Dr. Boudreaux reported as follows:

> I was asked to opine regarding Dr. Blackburn's findings and recommendations. Essentially, I find his opinion and recommendations (that Mr. Bertrand is very anxious and needs psychiatric treatment to prevent worsening) from 5/2015 quite reasonable, from a psychological perspective, assuming the veracity of Mr. Bertrand's self-reported symptoms. However, I believe the most appropriate anxiety disorder diagnosis for Mr. Bertrand is panic disorder, and not GAD. I share Dr. Blackburn's concern that, assuming Mr. Bertrand has severe anxiety symptoms, these should be treated, lest he risk long term disability. Again, however, I find clear evidence that his panic disorder predates the index incident by many years. Additionally, determining the objective severity of any validly present psychological symptoms is greatly clouded at this time due to empirical evidence of intentional symptom exaggeration on psychological testing.[56]

As she was retained by the worker's compensation carrier, Dr. Boudreaux's focus was on whether the claimant's mental impairments were caused by his workplace injury. What did not appear to be in question to Dr. Boudreaux was that

---

[55]    *Id.* at p. 178.

[56]    *Id.* at 417. Exaggeration of symptoms relates to the claimant's scores on the MMPI-2, a Social-Emotional Functioning test, and the Modified Somatic Perception Questionnaire (MSPQ), as well as the Sullivan Pain Catastrophizing Scale. Significantly, the claimant's score on the Pain Disability Index, used to assess one's self-reported level of disability due to pain, was not indicative of exaggeration of symptoms. *See* Rec. Doc. 9 at 413-14.

19

the claimant's history of anxiety, depression, and panic attacks pre-dated his workplace accident, and indeed, went back as far as 10-12 years.[57]  Additionally, Dr. Boudreaux echoed what many examining mental health providers had noted, which is that the claimant has a long-standing history of anxiety, depression, and panic attacks, which were exacerbated by his workplace injury.

The ALJ focused on Dr. Boudreaux's opinion that the claimant had exaggerated his symptoms on some of the testing she conducted.  Despite this, however, Dr. Boudreaux nevertheless noted that the claimant had a documented history of anxiety that appears to rise to the level of a panic disorder following his workplace injury.  To this extent, the opinion of Dr. Boudreaux is consistent with the opinions of Dr. Blackburn, Ms. Hebert, and Ms. Melton.

Thus, after a comprehensive review of the record, the undersigned concludes that the mental RFCs of Ms. Hebert and Ms. Melton are generally consistent with the findings of Drs. Blackburn and Boudreaux, but do not support the conclusion of the ALJ, which minimized the claimant's limitations due to mental impairments. Given that the reason for discounting Ms. Hebert and Ms. Melton's opinions was the lack of functional assessments in these providers' reporting and given that the new evidence includes mental functional assessments, the undersigned concludes there

---

[57]    *Id.* at p. 892.

is a reasonable probability that this new evidence would change the outcome of the Secretary's decision.  Furthermore, as noted above, the new medical evidence related to the relevant time period for the purposes of disability.  For these reasons, the undersigned finds that the decision of the ALJ is not supported by substantial evidence in the record, and this matter should be remanded to the ALJ for further consideration of this new evidence.

### 2.  The administrative medical opinions of Drs. Craig and Hauck and the medical opinion of Dr. Boudreaux

The claimant argues that the ALJ should not have considered the opinions of Dr. Johnny B. Craig and Dr. Margaret J. Hauck because he has "never met nor was [he] examined" by either doctor.  In June 2019, Dr. Craig opined that the claimant could perform work at the light exertional level; could frequently climb ramps or stairs, kneel, or crawl; and could occasionally climb ladders, ropes or scaffolds, stoop or crouch.[58]  The ALJ found this opinion persuasive, as he found it consistent with and supported by the overall record.[59]  In July 2019, Dr. Margaret J. Hauck found that the claimant had moderate limitations related to his mental impairments, as follows: could maintain sufficient attention and concentration to perform, semi-

---

[58]    *Id.* at 180.

[59]    *Id.*

complex (3-4 step) tasks over the course of a 40-hour workweek and sustain a routine; could perform activities within a schedule, maintain regular attendance, make necessary work-related decisions, be aware of normal hazards, travel to unfamiliar places, and set realistic goals; and could adapt to routine and predictable changes in the workplace and would do best in an environment without changing demands or quotas.[60]  The ALJ found Dr. Hauck's opinion "somewhat persuasive," but concluded that the claimant has further limitations caused by his anxiety/panic symptoms, which limit him to unskilled work activity.[61]

The claimant argues that because Drs. Craig and Hauck did not personally examine him, and because they did not review certain evidence, their opinions should not have been considered by the ALJ.  The claimant's arguments are without merit.  Drs. Craig and Hauck are non-examining state agency examiners who reviewed the claimant's medical records and provided their expert opinions concerning the claimant's ability to work based on their reviews of this evidence rather than a physical examination.  It was both proper and required for the ALJ to consider the opinions of these state agency examiners, as explained in the regulations below:

---

[60]     *Id.* at 181.

[61]     *Id.* at 181.  The opinions of Drs. Craig and Hauck are found in the "Disability Determination Explanation," located at pp. 148-64 of the transcript.

> (b) Administrative law judges are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law. They will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants as follows:
>
>> (1) Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.

20 C.F.R. §404.1513a(b)(1).[62]

Thus, it is an established practice in the social security disability determination process for state agency examiners to review medical records, without a personal medical examination, and make findings with respect to as claimant's ability to work.

With respect to the evidence the claimant argues the doctors did not review, the record shows that Drs. Craig and Hauck both considered the evidence that was in the record at the time of their reviews, which includes the records of Mandie Melton, a social worker.  Additionally, Dr. Hauck also considered the treatment evidence from the Center for Psychiatric Solutions, which includes the records of Kathryn Hebert.  The ALJ considered this evidence as well.[63]

---

[62]     *See also* 20 C.F.R. §416.913a(b)(1).

[63]     Rec. Doc. at p. 178.

For the foregoing reasons, the claimant's argument that the ALJ should not have considered the opinions of Drs. Craig and Hauck is without merit. However, on remand, the ALJ should reconsider the opinions of Drs. Craig and Hauck in light of the new medical evidence submitted to the Appeals Council.

### 3.    The Testimony of the Vocational Expert

Finally, the claimant argues that the ALJ did not properly consider the testimony of the VE at the administrative hearing. At the hearing, the ALJ posed a hypothetical question to the VE that included the claimant's age, education, and RFC reduced by the limitations accepted by the ALJ, and the VE responded that there are jobs in the national economy that the claimant can perform.[64] The VE was also asked to consider a hypothetical claimant with the claimant's age, education, and work experience, but who suffers from panic attacks that occur once or twice a week, and one could not predict which days the panic attacks would occur.[65] The VE testified that such a hypothetical claimant could not maintain any competitive employment.[66] The claimant argues that it was error for the ALJ not to rely on the testimony of the VE that, considering his panic attacks, he cannot maintain employment.

---

[64]    *Id.* at p. 142-43.

[65]    *Id.* at p. 143.

[66]    *Id.*

24

In *Holiday v. Barnhart*, 460 F. Supp. 2d 790, 805 (S.D. Tex. 2006), the district court explained:

> "Residual functional capacity" combines a medical assessment with the descriptions by physicians, the applicant or others of any limitations on the applicant's ability to work. *See id.* When a claimant's RFC is not sufficient to permit her to continue her former work, then her age, education, and work experience must be considered in evaluating whether she is capable of performing any other work. *See* 20 C.F.R. §§ 404.1561, 416.961. **The testimony of a vocational expert is valuable in this regard, as "he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey,* 230 F.3d at 145; *see also Masterson,* 309 F.3d at 273; *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir.1995); *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986). In the absence of contrary evidence, the ALJ may properly rely on the testimony of a vocational expert in reaching a conclusion regarding a claimant's RFC to perform work available in the national economy. *See Masterson,* 309 F.3d at 273.**

(emphasis added).

In the instant case, with the addition of the mental RFCs provided by Ms. Hebert and Ms. Melton after the ALJ's decision, there is contrary evidence regarding the ability of the claimant to work considering his mental impairments, and specifically, his panic attacks.  Given that the new evidence submitted addresses the panic attacks experienced by the claimant and given that Dr. Boudreaux specifically opined that the nature of the claimant's diagnosis is more properly characterized as panic attack disorder rather than generalized anxiety disorder, the undersigned

concludes that this matter should be remanded for a consideration of that new evidence, which may include a new hearing and another consultation with a VE.

### CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ's findings are not based on substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED AND REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. §405(g) for further consideration consistent with the findings made herein.

Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[67]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

---

[67]    See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir.1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 24th day of August, 2022.

_____
                    Carol B. Whitehurst
                    United States Magistrate Judge